UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                        CASE NUMBER: 2:11-cr-20693

 vs.                                      HON. GERALD E. ROSEN

ANNETTA POWELL,

        Defendant.
_____/

## SENTENCING MEMORANDUM FOR DEFENDANT, ANNETTA POWELL

    NOW COMES Defendant, ANNETTA POWELL, by and through her counsel JAMES C. THOMAS, and files the following Sentencing Memorandum setting forth all factors that this Honorable Court should consider in determining the type and length of sentence for Annetta Powell ("Ms. Powell").

### BACKGROUND

    Ms. Powell was charged in a 12-Count Indictment which alleged conspiracy to commit fraud, in violation of 18 USC §§1349, 1343, 1344 and 2. Ms. Powell has pled guilty to one count of the 12-Count Indictment, bank fraud conspiracy, in violation of 18 USC §§ 1349, 1344 pursuant to a Rule 11 Plea Agreement (Docket #37), which provides for recommended guidelines sentencing range of 33 to 41 months. There is no agreement as to fine.

1

## SENTENCING METHODOLOGY AND ISSUES

The United States Supreme Court has made clear that the Federal Sentencing Guidelines ("guidelines") are now to be considered as advisory only. See <u>United States v. Booker</u>, 543 U.S. 220 (2005); <u>United States v. Michael</u>, 576 F.3d 323 (6th Cir. 2009). The Sixth Circuit has recognized that <u>Booker</u> "breathe[d] life into the authority of the district court judges to engage in individualized sentencing." <u>United States v. Vonner</u>, 516 F.3d 382, 392 (6th Cir. 2008) (en banc). The term "advisory" no longer requires a slavish application of the guidelines under the guise of "fair consideration". <u>United States v. Jaber</u>, 362 F.Supp.2d 365 (D. Mass. 2005). Before imposing a sentence, a district court should begin by calculating the applicable guidelines range. <u>Gall v. United States</u>, 552 U.S. 38, 39 (2007). Next, the district court must also consider factors enumerated in 18 U.S.C. § 3553(a) in order to impose a sentence that is "sufficient, but not greater than necessary" to achieve the purposes set forth in 18 U.S.C. § 3553(a)(2). <u>Id.</u>, at 50, fn6. See also <u>United States v. Foreman</u>, 436 F.3d 638 n.1 (6th Cir. 2006) abrogated on other grounds by <u>United States v. Young</u>, 580 F.3d 373 (6th Cir. 2009). Those statutory purposes are:

>   (2)   the need for the sentence imposed—
>
>   >  (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>   >  (B) to afford adequate deterrence to criminal conduct;
>   >  (C) to protect the public from further crimes of the defendant;
>   >  (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

2

18 U.S.C. § 3553(a)(2). As some courts have explained, these purposes are in consideration of retribution, deterrence, incapacitation and rehabilitation. See United States v. Presley, 547 F.3d 625 (6th Cir. 2008); United States v. Denardi, 892 F.2d 269, 276 (3rd Cir. 1989). To achieve the goals of sentencing, the court must therefore consider the seven factors outlined in 18 U.S.C. § 3553(a). United States v. Webb, 403 F.3d 373, 385 n.8 (6th Cir. 2005).

It is essential to approach the sentencing of an individual, first recognizing that the guidelines are no longer to be presumed reasonable. Nelson v. United States, 555 U.S. 350, 352 (2009) (*per curiam*); See also Webb, 403 F.3d at 385 n. 9 ("[W]e also decline to hold that a sentence within a proper Guidelines range is per-se reasonable. Such a per-se test ... would effectively re-institute mandatory adherence to the Guidelines.").

Sentences must be both procedurally and substantively reasonable, and courts have distinguished between the two. United States v. Poynter, 495 F.3d 349, 351 (6th Cir. 2007). For a sentence to be procedurally reasonable, when a defendant raises non-frivolous arguments in seeking a lower sentence, "the record must reflect both that the district judge considered the defendant's argument and that the judge explained the basis for rejecting it." United States v. Recla, 560 F.3d 539, 547 (6th Cir. 2009) (*citing* Rita). To be substantively reasonable, the sentence must be "proportionate to the seriousness of the circumstances of the offense and offender, and sufficient but not greater than necessary, to comply with the purposes of § 3553(a)." United States v. Vowell, 516 F.3d 503, 512 (6th Cir. 2008) (internal quotations omitted).

When applying the aforementioned factors to Ms. Powell, the Court "must make an individualized assessment based on the facts presented" by the case without giving presumptive weight to the guidelines sentencing range. Gall, supra at 48-49. See also Koon v. United States, 518 U.S. 81, 113 (1996) (stating every convicted person should be considered as an individual and every case considered as a unique study in human failings). Judges are encouraged to consider all relevant facts to avoid sentencing disparities while maintaining flexibility sufficient to individualize sentences where necessary. Apprendi v. New Jersey, 530 U.S. 466, 490 (2000). Ms. Powell's case is one that warrants attention to her personal characteristics and flexibility by this Honorable Court.

## I. RULE 11 PLEA AGREEMENT

On February 18, 2014, Ms. Powell pled guilty pursuant to a Rule 11 Plea Agreement to count one of the Indictment. The agreed upon sentencing guideline range is 33 to 41 months. This was based upon a stipulation to a total offense level of 20 and a criminal history category of I. As reflected below, Probation has a different calculation resulting in guidelines of 41 to 51 months. We do not agree with Probation and submit that the amount agreed to in the Rule 11 Plea Agreement is the controlling amount of loss and further amounts are not readily provable (see below).

## II. COMPUTATION OF THE GUIDELINES AND PSIR OBJECTIONS

Ms. Powell's base offense level is 7. Pursuant to U.S.S.G. § 2K1.1(b)(1)(B), her base level offense level was increased by 16 points because the offense involved more than one million dollars. Ms. Powell received a total of a three-point deduction for her

acceptance of responsibility. As a result, her total offense level is 20. Given her lack of a criminal record, she has a criminal history score of I. On September 30, 2014, Counsel met with the Government in an effort to resolve issues relating to the amount of loss. Counsel agrees with the calculation provided in the Rule 11 Plea Agreement. It is believed that the Government does as well.

Counsel objects to Page 5, paragraph 14 of the PSIR and all subsequent parts of the PSIR which are impacted by the addition of relevant conduct beyond what was agreed to by the parties in the Rule 11 Plea Agreement. Ms. Powell objects to the increased loss amount, restitution amount, and guidelines range as a result of Probation adding relevant conduct in the guideline calculation. Ms. Powell takes exception, in large part, to paragraphs 13 and 14, page 5 of the PSIR wherein the victims and amounts of loss are calculated. Table A, below, specifies the amount of loss per bank as estimated in the PSIR.

**Table A: PSIR Loss Calculations**

| Bank | Loss Amount | |
|---|---:|---:|
| **Citizens/Charter One** | $584,886.89 | |
| **Flagstar** | $78,488.61 | $95,361.39 |
| **Fifth Third** | $1,429,991.21 | |
| **Taylor, Bean, Whitaker** | $100,096.07 | |
| **Washington Mutual** | $164,425.00 | |
| **Wachovia** | $102,630.16 | |
| **American Sterling** | $97,500.00 | |
| | $2,653,379.33 | |

The Rule 11 is bereft of any specificity regarding how the loss computations for each of the banks figures were tallied. Accordingly, counsel has endeavored to provide materials that present a clearer picture about the houses in question in Indictment, the money expended in repairing the homes and what happened to the houses subsequent to Ms. Powell. Table B specifies the loans in this matter and the total amount of the mortgages from these properties.

**Table B: All homes with mortgages from the Indictment**

| Count | Address | Borrower | Bank | Sale Price |
|---|---|---|---|---|
| 2 | 6100 Greenview | Jason Remner | Flagstar | $95,000.00 |
| 3 | 13947 Westwood | Jason Remner | Citizens | $74,000.00 |
| 4 | 8234 Warwick | Jason Remner | Fifth Third | $82,000.00 |
| 5 | 19339 Syracuse | Arthur Smith | Citizens | $77,000.00 |
| 6 | 20101 Griggs | Arthur Smith | Fifth Third | $65,000.00 |
| 7 | 15309 Glenwood | Arthur Smith | Washington Mutual | $75,000.00 |
| 8 | 20275 Westphalia | Arthur Smith | Flagstar | $88,000.00 |
| 9 | 20576 Vaughn | Matthew Hinderman | American Sterling | $130,000.00 |
| 10 | 15750 Lindsay | Matthew Hinderman | Wachovia | $138,000.00 |
| 11 | 18271 St. Mary's | Marilyn Figuero | Washington Mutual | $94,750.00 |
| 12 | 17557 Indiana | Marilyn Figuero | Taylor, Bean and Whitaker | $100,096.07 |
|  |  |  | **Total** | **$1,018,846.07** |

Particularly striking is the amount of loss estimated by Fifth Third Bank compared to the allegations set forth in the Indictment. The amount of loss it claims (almost $1.5 million) is greater than the sum total of all of the mortgages discussed in the Indictment.

It is unclear how Fifth Third came to this estimation. Table C, below, illustrates the properties that involved Fifth Third mortgages.

**Table C: The homes with mortgages from Fifth Third Bank Mortgage from the Indictment**

|   | Address | Borrower | Bank | Sale Price | Amount Seller Purchased | Loan Amount |
|---|---|---|---|---|---|---|
| 4 | 8234 Warwick | Jason Remner | Fifth Third | $82,000.00 | $42,900.00 | $77,900.00 |
| 6 | 20101 Griggs | Arthur Smith | Fifth Third | $65,000.00 | $35,000.00 | $61,750.00 |
|   |   |   | **Totals** | **$147,000.00** | **$77,900.00** | **$139,650.00** |

Additionally, each property had been subsequently sold after foreclosure. The amount the properties were sold for also minimizes the loss exposure for each of the banks as demonstrated in Table D below. These amounts were not addressed in the PSIR.

**Table D: All properties with foreclosure sale prices**

| Count | Address | Borrower | Bank | Sale Price | Foreclosure Sale Price | Difference |
|---|---|---|---|---|---|---|
| 2 | 6100 Greenview | Jason Remner | Flagstar | $95,000.00 | $95,519.00 | -$519.00 |
| 3 | 13947 Westwood | Jason Remner | Citizens | $74,000.00 | $73,928.29 | $71.71 |
| 4 | 8234 Warwick | Jason Remner | Fifth Third | $82,000.00 | $88,519.59 | -$6,519.59 |
| 5 | 19339 Syracuse | Arthur Smith | Citizens | $77,000.00 | $65700.00 | $11,300.00 |
| 6 | 20101 Griggs | Arthur Smith | Fifth Third | $65,000.00 | $52,000.00 | $13,000.00 |
| 7 | 15309 Glenwood | Arthur Smith | Washington Mutual | $75,000.00 | $81084.66 | -$6,084.66 |
| 8 | 20275 Westphalia | Arthur Smith | Flagstar | $88,000.00 | $90,569.23 | -$2,569.23 |
| 9 | 20576 Vaughn | Matthew Hinderman | American Sterling Bank | $130,000.00 | $20,000.00 | $110,000.00 |
| 10 | 15750 Lindsay | Matthew Hinderman | Wachovia | $138,000.00 | $103723.13 | $34,276.87 |
| 11 | 18271 St. Mary's | Marilyn Figuero | Not in foreclosure | $94,750.00 | N/A | |
| 12 | 17557 Indiana | Marilyn Figuero | Not in foreclosure | $100,096.07 | N/A | |
| | | | | **$1,018,846.07** | **$671,043.90** | **$347,802.17** |

Last, an additional consideration not factored into the amount of loss is the amount of money invested by Ms. Powell into the homes in question. According to the accounting data, for the mortgages in question for 2003, $320,000 was invested into the houses for renovations, improvements and upkeep. By way of example, on the two Fifth Third mortgages alone, $45,048.16 was invested in the 8234 Warwick address and $23,088.66 was invested in the 20101 Griggs address (see Table E). This amount must also be factored in when weighing the amount of loss on the properties.

Table E: Money Invested in Properties

| Property | Amount |
|---|---|
| 6100 Greenview | $83,066.96 |
| 13947 Westwood | $24,884.16 |
| 8234 Warwick | $45,048.16 |
| 19339 Syracuse | $31,866.11 |
| 20101 Griggs | $23,088.66 |
| 15309 Glenwood | $30,846.80 |
| 20275 Westphalia | $81,342.36 |
| Total: | $320,143.21 |

When taking these calculations into account, the correct guidelines range is that reflected in the Rule 11 Plea Agreement.

### III. VARIANCE FROM ADVISORY GUIDELINES

Until 2005, a defendant was precluded from arguing a variance outside the express terms of a Rule 11 Plea Agreement. United States v. Williams, 510 F.3d 416, 435 (3rd. Cir. 2007). That is not true today. The district court has an independent obligation to exercise its discretion to find an appropriate sentence. Freeman v. United States, 131 U.S. 2685 (2011); United States v. Abram, 440 F. Appx. 470, 473 (6th Cir. 2011) (unpublished). Ms. Powell is requesting a downward variance from the sentencing guidelines range.

Counsel submits that a lengthy custodial sentence, under the particular facts and circumstances of this case, is greater than necessary to achieve the stated goals of sentencing. In 2003 Justice Anthony Kennedy stated, "Our resources are misspent, our punishments too severe; our sentences too long . . . the sentencing guidelines are

9

responsible in part for the increased terms [and they] should be revised downward."1 Ten years later, United States Attorney General Eric Holder echoed Justice Kennedy in his own speech to the ABA, saying "too many Americans go to too many prisons for far too long, and for no truly good law enforcement reason. . . . ."2

Ms. Powell's circumstance is one that warrants the discretion of this Honorable Court for the reasons outlined below.

### A. Ms. Powell's Lack of Criminal History Justifies a Downward Variance

Ms. Powell has no prior contact with the criminal justice system. Ms. Powell is thirty-eight years old and the relevant conduct in this matter occurred in her early and mid twenties. Decisions in this circuit have determined that lack of a criminal history is relevant when granting a downward variance. United States v. Duane, 533 F.3d 441 (6th Cir. 2008) ([T]he district court did not respond to Duane's first argument — that he deserved a more lenient sentence because he had zero criminal history points. This was not a particularly strong argument given that Duane's criminal history category was taken into account in determining his Guidelines range. But the argument was not completely frivolous. Because Duane had zero points at age 57, it was determined that he might plausibly argue that even category I — which applies when a defendant has zero or one criminal history point(s) — overstated his criminal history to some degree.").

---

1 http://www.abanow.org/2003/08/speech-by-justice-anthony-kennedy-at-aba-annual-meeting/
2 http://www.justice.gov/iso/opa/ag/speeches/2013/ag-speech-130812.html

Not only does Ms. Powell have a criminal history category of I, but she has no criminal history whatsoever. She is thirty eight years old, and this court may take that into account. <u>United States v. Germosen</u>, 473 F.Supp.2d 221, 227 (D.Mass. 2007) (in conspiracy to import heroin by swallowing pellets, below guideline sentence of 6 months home detention warranted in part because first offense and " there is a demonstrable difference in the recidivism rates of real first offenders as compared to other defendants in Criminal History Category I.")  See also <u>United States v. Collington</u>, 461 F.3d 805 (6th Cir. 2006).  Finally, Congress stressed in the duties of the Commission to "insure that the guidelines reflect the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense…". 28 U.S.C. §944(j).

**B. Ms. Powell Has an Excellent Employment History and Has Been a Productive Citizen since the Relevant Conduct**

Ms. Powell has been gainfully employed since she was a teenager.  Even through this matter, she has remained employed.  This is relevant not only to her ability to pay restitution, which most surely would be ordered, but in granting a downward variance. <u>United States v. Ruff</u>, 535 F.3d 999 (9th Cir. 2008) ( Defendant pled guilty to embezzling $650,000 from non-profit organization over course of three years, and with guidelines 30-37 months, sentence of one day in jail and supervised release for three years on condition the defendant spend one year in community treatment center to go to work and obtain counseling  was held not unreasonable in part because of defendant's "history of strong employment"); <u>United States v. Fuson</u>, (6th Cir. Feb. 8, 2007), (unpublished) 2007 WL

11

414265 (Defendant convicted of felon in possession of firearm and guidelines 24-30 months. The court's sentence of probation and six (6) months home confinement was held reasonable in part because client's record since a relatively minor felony conviction was unblemished for the past seven years and client's was "working and supporting his family").

Additionally, over eleven years has passed since the offense occurred, and Ms. Powell has led a law-abiding life as a productive citizen. United States v. Edwards, 595 F.3d 1004 (9th Cir. 2010) (Defendant was convicted of bankruptcy fraud, and it was proper for judge to consider that "by the time of the 2008 re-sentencing, the offenses had been committed nine years previously and that Edwards had left the stress of his earlier job in the construction business that led him to become involved in the financial fraud scheme, and completed without incident three and one half years of probation."). Ms. Powell has continued to rebuild her life over the past eleven years. Letters in support of her show her contributions to family, friends, and the community.

### C. Ms. Powell's Family Support Warrant a Downward Variance

Ms. Powell has the support of her family, and evidence suggests familial support is a factor in lower recidivism. See Shirley R. Klein *et al., Inmate Family Functioning*, 46 Int'l J. Offender Therapy & Comp. Criminology 95, 99-100 (2002) ("The relationship between family ties and lower recidivism has been consistent across study populations, different periods, and different methodological procedures."). As reflected in the attached letters, Ms. Powell's friends, employees and family are supporting her

throughout this difficult period in her life.  It is with this support that she has been able to continue working and rebuilding her life.  Not only does she have the support of her family, but she is critical in supporting her immediate and extended family.  She has held a pivotal role in her family since the age of five.  She gives without being asked and gives of herself freely to others.

Counsel submits the Court should grant a downward variance for the reasons stated above and after application of the relevant sentencing factors.

## IV. APPLICATION OF THE 18 U.S.C. § 3553(a) FACTORS

### 18 USC § 3553(a)(1): Nature and Circumstances of the Offense and Ms. Powell's History and Characteristics

The rigidity of the once mandatory guidelines made it easy for fashioning a sentence to be a matter of mechanics.  However, post Booker supra, the guidelines are only one of many factors to be considered.  District Courts have "increasingly recognized the importance of departure by reason of offender characteristics for the fair fulfillment of the sentencing scheme prescribed by the Sentencing Reform Act and the Sentencing Guidelines." See United States v. Restrepo, 999 F.2d 640, 643 (2nd Cir. 1993) (quoting United States v. Merritt, 988 F.2d 1298, 1302 (2nd Cir.), cert. denied, 124 L.Ed.2d 683 (1993).

Ms. Powell, daughter to Joyce and Abram Powell, was raised in the inner city of Detroit, Michigan.  Ms. Powell's parents can neither hear nor speak.  At a very early age she learned American Sign Language, and Ms. Powell assumed the role of helping them

communicate with others. She continues to do so to this day. She grew up, as she relates, "poor", but that did not stop her from helping others. As you will see from her own letter to the Court, as well as other letters submitted to the Court on behalf of Ms. Powell, this is a very highly-motivated woman who has come from humble beginnings.

Ms. Powell's childhood was less than ideal. Children at school picked on her for being poor and vulnerable. These struggles made her determined to help herself out of the poverty of her childhood and be successful. Some say, along with this determination, Ms. Powell developed a fear of poverty itself. She graduated from high school and immediately began working at Johnson Controls. Working for someone else lit an entrepreneurial spirit in Ms. Powell. Hoping to work for herself one day, Ms. Powell put herself through college and earned a degree in Business Management.

When she was 23 years old, Ms. Powell fulfilled her dream and became an independent businesswoman. She left Johnson Controls and started her first business, selling clothing purchased in New York to customers in Detroit. To begin the business, she borrowed money from her parents and sold clothing from the trunk of her car. She was proud when she was able to not only pay back the money borrowed, but also paid them interest on the loan. After the clothing resale business, Ms. Powell opened up a restaurant with her then boyfriend. Sadly, this individual was physically and emotionally abusive to her. Although the restaurant began to make money, unfortunately, neighborhood thugs robbed her several times at gunpoint. She decided to change her life by leaving that business and her boyfriend for obvious reasons. That is when she discovered the real estate industry.

Ms. Powell was 25 years old when she learned how to "flip" a house. Believing that this was a viable business opportunity, she researched distressed properties in Detroit and how to renovate them. Her goal was to purchase distressed homes, renovate them and sell them for a profit. Her plan was to find individuals, who would be interested in buying homes, locate distressed properties and then sell them the homes. She decided that she would aggressively market this plan as investment opportunities. Business was a success. Ms. Powell rented an office, advertised in the newspaper and focused on her business.

Ms. Powell learned early on that there was a market for what she was selling. She found people eager to invest in properties in Detroit. She used startup capital to renovate the homes so that they would look like new. She found people interested in buying the homes and, interestingly, also found tenants to rent the properties from the owners. As part of her marketing plan, she offered seminars on how to be a landlord and also published literature on how to successfully rent properties and provided it to interested people.

Unfortunately for Ms. Powell, the housing market, especially in Detroit, began to take a dramatic turn in 2006 and 2007. Ms. Powell's ambitions continued to grow and she adopted a plan to provide financial incentives to investors to encourage them to purchase rehabilitated homes through her. This plan, and the ultimate downturn in the economy, led her to commit the acts for which she was indicted and has embraced in her letter to the Court.

In her own words, Ms. Powell has stated that she has moved on and completely

changed her life from the events that took place years ago. She has learned from her mistakes and "realized that wealth isn't always about the bottom line." Ms. Powell grew up in inner city Detroit, a child of poverty. She was also a direct victim of domestic violence. Although she has tirelessly worked to and succeeded in lifting herself from these conditions, the events of her life shaped her as a person and can be considered when the court is determining her sentence. See United States v. Lopez, 938 F.2d 1293, 1297-99 (D.C.Cir. 1991) (where defendant received 51 months in cocaine case, case remanded for district court to consider departure because defendant, among other things, was exposed to domestic violence and grew up in the slum areas of New York and of Puerto Rico); see also United States v. Genao, 831 F.Supp. 246, 254 (S.D.N.Y.1993)("Can we really say we have a rational system of justice when the court, in imposing sentence, is stripped of the power to even consider the socio-economic and educational background of the defendant"); Griffin v. Illinois, 351 U.S. 12, 23 (1956) (Frankfurter, J., concurring, quoting Anatole France)("The law, in its majestic equality, forbids the rich as well as the poor to sleep under bridges, to beg in the streets, and to steal bread.").

**18 USC § 3553(a)(2)(A): The Requirement that the Sentence Imposed Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment for the Offense**

The defendant's degree of remorse may be considered in a downward variance from the guidelines range under the statutory sentencing factors. United States v. Howe, 543 F.3d 128, 130 (3d Cir. 2008); See also, United States v. Jaroszenko, 92 F.3d 486, 488 (7th Cir. 1996). Ms. Powell understands the seriousness of her offense and has expressed remorse for her decision to engage in the conduct related to this offense. As reflected in

the letters of support of Ms. Powell, she has acknowledged her wrongdoing to those around her and has expressed deep remorse. Moreover, she has expressed a fervent personal goal to better herself as a person and businesswoman.

It is well known that a felony conviction wreaks havoc on a person's life. United States v, Wulff, 758 F.2d 1121, 1125 (6th Cir. 1985) ("a felony conviction irreparably damages one's reputation.") See generally United States v. Leon, 341 F.3d 928, 929 (9th Cir. 2003); United States v. Aguirre, 214 F.3d 1122, 1123 (9th Cir. 2000). The collateral consequences of Ms. Powell's conduct, and resulting guilty plea, to a large extent reflect the seriousness of the offense and provide punishment. A lengthy term of incarceration is not necessary.

**18 USC § 3553(a)(2)(B): Deter Criminal Conduct**

Ms. Powell has never served a period of incarceration, and has no criminal history whatsoever. The conduct at subject in this matter occurred between the years 2000 to 2003. Since that time, Ms. Powell has maintained employment and has been a productive law-abiding citizen. It is appropriate for a sentencing court to vary from the guidelines based upon evidence of a substantial likelihood that a defendant will successfully overcome the cause of the criminal behavior being punished. See United States v. Davis, 763 F.Supp. 645, 652 (D.C. Cir. 1991). In Ms. Powell's case, she has already proven her ability to move on from the offending conduct and lead a productive life without imposition of punishment.

**18 USC § 3553(a)(2)(C): Protect the Public From Further Crimes of the Defendant**

Post <u>Booker</u> and <u>FanFan</u> cases have reiterated that incarceration is not always necessary to protect the public.  See <u>United States v. Edwards</u> 595 F.3d 1004 (9th Cir. 2010); <u>Unite States v. Baker,</u> 502 F.3d 465 (6th Cir. 2007); <u>Unites States v. Stall</u>, 581 F.3d 276 (6th Cir. 2009) (where variances that did not provide for incarceration were held not to be unreasonable).  As stated above, Ms. Powell has no history of violence, no criminal history, and no contact whatsoever with the criminal justice system prior to this matter.

**18 USC § 3553(a)(2)(D): Provide the Defendant with Needed Educational or Vocational Training, Medical Care or Other Correctional Treatment in the Most Effective Manner**

Ms. Powell is an educated woman with no health issues and a strong employment record.  She has no issues regarding substance abuse.

**18 USC § 3553(a)(3) and (4): Kinds of Sentences Available and the Sentencing Range Established By the Federal Sentencing Guidelines**

The advisory guidelines range is 33 - 41 months.

**18 USC § 3553(a)(5): Any Pertinent Policy Statement Issued by the Sentencing Commission**

There are no pertinent policy statements.

**18 USC § 3553(a)(6): The Need to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct**

There is no concern for unwarranted sentencing disparities.  Ms. Powell was charged with her sister who is awaiting trial, and Charles Wadowski who pled guilty to Count 1 of the Indictment.  However, Mr. Wadowski died before sentencing.

**18 USC § 3553(a)(7): The Need to Provide Restitution to Any Victims**

As outlined above, restitution has been stipulated in this matter. It is in the Court's discretion to fashion a sentence for Ms. Powell that will enable her to continue working and pay towards her restitution obligation. United States v. Edwards, 595 F.3d 1004 (9th Cir. 2010) (Defendant was convicted of bankruptcy fraud and on probation for prior state conviction for fraud with guidelines range 27-33 months. Sentence of probation seven months of which was to be served under house arrest, and $5,000 fine, and restitution of $100,000 not abuse of discretion in part because "the district judge recognized that restitution serves as a deterrent, and that [t]he term of probation imposed will enable [Edwards] to continue working in order to pay the significant amount of restitution he ow[e]s."); See also United States v. Coleman, 370 F.Supp.2d 661 (S.D.Ohio 2005).

Ms. Powell is an extremely hardworking woman with a degree, marketable skills, and a strong history of self-employment. Ms. Powell is in a much better position to pay restitution if able to continue to work without disruption.

## IV.     CONCLUSION

Given the foregoing facts and circumstances, defense counsel requests this Honorable Court to vary downward from the guidelines and fashion a sentence for Annetta Powell that is sufficient, but not greater than necessary to satisfy the requirements of 18 USC § 3553(a).

                Respectfully Submitted,

                O'REILLY RANCILIO P.C.

                By: /S/ James C. Thomas
                James C. Thomas P23801
                Counsel for Defendant, Annetta Powell
                12900 Hall Road, Suite 350
                Sterling Heights, MI 48313
                jthomas@orlaw.com

DATED:  October 20, 2014