UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


UNITED STATES OF AMERICA


                    Government.

        v.                          Case No. 11-20693


ANNETTA POWELL, D-1,


                    Defendant.

_____/

SENTENCE HEARING

BEFORE CHIEF JUDGE GERALD E. ROSEN
United States District Judge
733 US Courthouse & Federal Building
231 W. Lafayette Street
Detroit, Michigan 48226
Tuesday, December 2, 2014


APPEARANCES:

        CRAIG WEIER
        Assistant United States Attorney
        211 W. Fort Street
        Detroit, MI 48226
        On behalf of the Government.

        JAMES C. THOMAS
        O'Reilly Rancillio, P.C.
        12900 Hall Road
        Sterling Heights, MI 48313
        On behalf of the Defendant.


To Obtain a Certified Transcript:
Carol S. Sapala, RMR, FCRR
313.961.7552
www.transcriptorders.com

Sentence Hearing     12-2-2014

# C O N T E N T S

---

IDENTIFICATION                                    PAGE


WITNESSES

None.

Sentence Hearing                                    4


Certificate of Court Reporter                    24

# E X H I B I T S

---

IDENTIFICATION                        MARKED      RECEIVED


None Marked, Offered or Received

Sentence Hearing      12-2-2014

1              Detroit, Michigan

2              Tuesday, December 2, 2014

3              2:49 p.m.

4              THE CLERK:  Now calling case number 11-20693,

5     defendant number one, United States versus Annetta

6     Powell.

7              THE COURT:  Good afternoon.  Appearances,

8     please.

9              MR. WEIER:  If it please the Court, Craig

10    Weier, on behalf of the United States.

11        Also at counsel table is Brian Cuney from the

12    Federal Bureau of Investigation.

13             MR. THOMAS:  Your Honor, my name is James

14    Thomas.  I'm appearing on behalf of Mrs. Powell who's

15    here on my left.

16        We can we approach?

17             THE COURT:  Please.

18             (A discussion was held at the bench)

19             THE COURT:  All right.

20        Mr. Thomas, please confirm that you've had the

21    opportunity to review the Presentence Report with

22    Ms. Powell.

23             MR. THOMAS:  Your Honor, we have received the

24    Presentence Report.  I've reviewed it with her.

25

Sentence Hearing     12-2-2014

1    We have discussed it on several occasions and have

2  noted it in our Sentencing Memorandum.

3            THE COURT:  All right.  And, Mr. Weier, for

4  the government?

5            MR. WEIER:  Yes.  I've reviewed the

6  Presentence Report as well, Your Honor, and we've

7  addressed it in the Sentencing Memorandum as well.

8            THE COURT:  All right.

9    The recommended guideline range in the plea

10  agreement was 33 to 41 months; that was based upon an

11  offense level premised upon an amount of loss that was

12  about $2 million.

13    The Probation Officer, in the preparation of the

14  report, calculated a slightly greater loss -- well, a

15  loss slightly greater then the next level up.  The next

16  level up would have been the two, two and-a-half million

17  dollars threshold.

18    Probation calculated the amount of loss at about

19  $2.6 million or about $100,000 over.

20    I wanted to give both counsel, since both counsel

21  objected to the amount of loss on the same basis, I

22  wanted to give both counsel an opportunity to address

23  that here on the record.

24            MR. WEIER:  Thank you, Your Honor.

25

Usa v Powell 11-20693

Sentence Hearing    12-2-2014

1      If I may, for the United States, I can indicate to

2  the Court that I've discussed the matter with Mr.

3  Thomas.  And that we are in agreement that to submit the

4  case to the Court on the reduced sentencing guideline

5  range.  We're willing to stand behind that reduced

6  range.

7      The reason being that we were unable to determine

8  with any great specificity the loss figures steming from

9  the transactions identified by the Probation Department

10  in that extra $500,000 or so losses that they assessed.

11      More specifically, the Probation Department

12  assessed the full amount of the loan in calculating

13  those losses, which I think, absent any other

14  circumstances, might be inappropriate.

15      However, we were not able to specifically identify

16  the collateral offset and the outstanding balance of

17  those loans.  So we're standing by the figures in the

18  Rule 11 Plea Agreement.

19      MR. THOMAS:  Judge, it was our position that

20  the amount that we had agreed upon was what was readily

21  proveable.

22      And that because of the vagaries of time and

23  questions regarding reimbursement of loss amounts upon

24  sale, that that should be the amount and nothing more.

25

Sentence Hearing     12-2-2014

1    And as a result, we're asking you for a 33 to 41

2   month guideline as was contemplated by the Rule 11 Plea

3   Agreement.

4        THE COURT:  All right.  I'm going to agree to

5   the guideline range agreed to by the parties in the Rule

6   11 Plea Agreement.

7    The Court's gone through the Presentence Report

8   looking at the relevant conduct referred to by the

9   Probation Officer and the calculation and the amount of

10   loss.

11    And although the Court is not able to say with any

12   degree of certainty that the probation officer was

13   wrong, the Court is not also -- is also not able to say

14   with any degree of certainty that he was right.  Some of

15   the numbers are not amenable to precise calculation,

16   unfortunately.

17    So the Court is willing to abide by that agreed

18   upon amount of loss reached by parties.  So the

19   beginning guideline range will be 33 to 41 months.

20    I don't think there are any other issues with the

21   Presentence Report, gentlemen?

22        MR. WEIER:  No, Your Honor, on behalf of the

23   United States.

24        MR. THOMAS:  There are none.

25

Usa v Powell 11-20693

Sentence Hearing      12-2-2014

1        THE COURT:  Mr. Thomas, allocution on behalf

2    of Ms. Powell.

3        MR. THOMAS:   Judge, I should acknowledge first

4    this is a case that has that has been extensively

5    pre-tried.

6        We've have had several conversations with the Court

7    relating to this matter and I know that you know what my

8    feelings are about this particular type of prosecution;

9    specifically as it relates to how we're going to do the

10   sentencing as in this particular case with Ms. Powell.

11       I've submitted a Sentencing Memorandum and

12   significant letters from people in the community who

13   she's dealt with to talk about her as a person.

14       She's had a tough life.  She lived in the City of

15   Detroit.  She was raised in a home where Mom and Dad

16   both had handicaps.  She learned American Sign Language.

17   She was their voice for many years.

18       She is reported by people that she's worked with

19   and her neighbors and friends to be a kind, caring,

20   considerate person, a giving person; you know, the type

21   of person you might have want to have as a friend or

22   neighbor.

23       This is a case where it seems as if she started

24   with the best of intentions and things got away.

25

Usa v Powell 11-20693

Sentence Hearing     12-2-2014

1    She's acknowledged and embraced her responsibility

2  for the document fraud and getting people into homes.

3    On one hand, it's the basis upon which there's many

4  abandoned homes in Detroit.  I don't know what to blame.

5  I mean do we blame -- do we blame the economy in 2006 or

6  2007 for the fact that they're so many homes that people

7  have walked way from?

8    Or is it the fact that the banks' lending policies

9  were lax and that they weren't monitoring the loan

10  documents as well?

11    Or was it Ms. Powell's part; and that is, being

12  involved in trying to assist these people to get into

13  homes that they may not have qualified for.  I think

14  it's a combination of all of those things.

15    I don't want to shirk her responsibility and I

16  don't want it to seem as if she's not accepting her

17  responsibility.

18    But, you know, she put in over a million-five of

19  money that were proceeds of the sales of these

20  properties back into the properties so she could make

21  them habitable.

22    She took people and conducted classes on how it is

23  they could manage the real estate as an investor; albeit

24  they were supposed to be residential homes.

25

Sentence Hearing     12-2-2014

1     She found Section 8 tenants for the homes so that

2  they could lease the homes.  And when some of the people

3  lost tenants, she would even help them to find new

4  tenants, get them to come into the homes.

5     So the people that were investing in the homes,

6  albeit improperly, would be able to make their payments

7  and so that they could then build well, which was the

8  big dream we all had in 2006 when the bottom fell out.

9     That is, people who were well intended to put money

10  into their homes realized that they'd over-extended

11  themselves and couldn't pay their mortgages, even

12  without any fraud, were walking away from significant

13  assets that could have appreciated, would have

14  appreciated, had they had the time to continue to make

15  payments, if they had the ability to continue to make

16  their payments except for the fact the economy fell

17  through.

18     Now that being said, she's embraced the fact that

19  she's done something wrong.  She has -- and the letters

20  that you've seen acknowledged that to the people that

21  have sent letters on her behalf.

22     I went to a seminar at Wayne State University the

23  other day, you know, Ricardo Hinojosa was there, Jack

24  Recoff was there; they're talking about how much time is

25  too much time.

Usa v Powell 11-20693

Sentence Hearing      12-2-2014

1        This morning I got up early and I read an opinion

2    by a judge in the Southern District of New York, Judge

3    Weinstein, who's talking about how it is that we've now

4    got ourselves in the position where people are doing so

5    much time.

6        There's certain sociological theories that say that

7    it isn't amount of time that you give, it is the

8    certainty of punishment.

9        And certainly as we have seen in this case proceed,

10   we knew that the government was on a juggernaut and that

11   there was no way we were going to avoid liability for

12   what it was that happened here.

13       The certainty of punishment is here and we're not

14   asking the Court for a probationary sentence.  We think

15   a term of incarceration with guidelines of 33 months may

16   be too long under the circumstances for this particular

17   defendant.

18       I'm going to ask to you vary to 18 months.  I'm

19   going to ask you to provide for restitution.

20       The Court asked a question about her business and

21   how it is continuing.  She has four locations, she has

22   20 employees, she will be able to pay restitution and

23   she can start to pay that.

24           THE COURT:  Who's going to run her business

25   when she's away?

Usa v Powell 11-20693

Sentence Hearing      12-2-2014

1          MR. THOMAS:  I'm sorry?

2          THE COURT:  Who's going to run her business?

3          MR. THOMAS:  She has managers at each

4   location, you know.  And at each location, she's had

5   extensive training with the managers in the last year

6   and-a-half.

7       And we're certain that she's going to be able to

8   continue the business and that she's going be able to

9   comply with the law.

10          THE COURT:  Thank you, Mr. Thomas.

11       Mr. Weier?

12          MR. WEIER:  Thank you, Your Honor.

13       I don't think there's been any issue about

14   Ms. Powell's ability to comply with the law.  The issue

15   in the case is Ms. Powell's willingness to comply with

16   the law.

17       Mr. Thomas' allocution for Ms. Powell contained a

18   great deal of argument which I called self

19   congratulatory assertions in my sentencing memo for a

20   reason.

21       Ms. Powell was doing no one any favors other than

22   enriching herself.  The assertion that Ms. Powell was

23   trying to put people into houses they couldn't afford is

24   not accurate.

25

Sentence Hearing     12-2-2014

1      Miss Powell was selling houses to people as

2   investment properties.  Ms. Powell was selling two or

3   four or six or ten houses to people who couldn't qualify

4   for one mortgage.

5      Ms. Powell was representing to banks that the

6   properties were worth far more then they were.  And,

7   yes, if she put some money into the properties -- I

8   certainly have not seen any evidence that she put 1.5

9   million in the properties.  If she did, that money came

10  from the lending institutions.

11     Ms. Powell didn't sacrifice anything.  She used the

12  money from the loans to improve the properties.

13     We've had --we've had some issues and we've had

14  some issues with Ms. Powell's business as it currently

15  is operated or was at least operated while Ms. Powell

16  was on bond.

17     We demonstrated to the Court with an affidavit from

18  the Special Agent of the IRS that Ms. Powell -- and I

19  detailed this and I attached the affidavits in my

20  sentencing memo.

21     This defendant is not a defendant who is incapable

22  of complying with the law; she's certainly capable of

23  complying with the law.  But in 2012 while this case was

24  pending, she committed another felony while on bond.  We

25  didn't prosecute her for that.

Sentence Hearing     12-2-2014

1        The IRS has chosen, they tell me, to pursue that

2   matter administratively for reasons that are not

3   entirely clear.

4        But this is not a person who has shown the Court by

5   post-offense conduct that she will maintain a law

6   abiding -- a law abiding future.  And for that reason, I

7   don't believe that Ms. Powell deserves leniency.

8        There's, as the Court is aware, a very big

9   discussion in the criminal justice community now about

10  lengths of sentences.  I appreciate that.  We have more

11  prisoners in this country then any other country in the

12  world, per capita.  And it doesn't matter to the Court

13  what my personal opinion about that is.

14       But I will say that there are still sentencing

15  guidelines and those guidelines are advisory and those

16  guidelines have a basis.

17       And the kinds of offenses that have created the

18  numbers of prisoners that we're seeing in this country

19  are not bank fraud offenses; I think the Court and Mr.

20  Thomas are well aware of that.

21       This is a case where Ms. Powell broke the law not

22  once or twice, but for six years.  She emailed clients

23  that they wouldn't -- if they had to tell the truth, you

24  wouldn't get mortgages.

25

Sentence Hearing    12-2-2014

1      She emailed clients as late as 2010 when she was

2  trying to resurrect her business.

3      That certain mortgage brokers would no longer deal

4  with her because they would be liable for false

5  statements in the applications because of the licensing

6  laws.

7      This is somebody who not only broke the law, but

8  did it consciously for a long period of time, was

9  raided, the investigation continued, she was indicted.

10     As the case was pending, she continued to break the

11  law.  And to me, Your Honor, this is not a defendant who

12  should be asking for leniency.  That's all.

13          THE COURT:  Okay.  Thank you.

14     Ms. Powell, do you wish to address the Court?

15          MR. THOMAS:  Judge as it relates -- may I have

16  rebuttal just for a second?

17          THE COURT:  I'm more interested --

18          MR. THOMAS:  Should I have any further

19  argument on the tax issue?

20          THE COURT:  I'm really more interested in

21  hearing from Ms. Powell.

22          THE DEFENDANT:  I definitely accept full

23  responsibility for what I did.

24     And during my time, you know, I learned personal

25  development and, you know, just learning how to be a

Sentence Hearing     12-2-2014

1   better person.

2          THE COURT:  Ms. Powell, may I ask you a couple

3   questions that really arise out of the letters that I've

4   read?

5       What lawyers say about their clients, what the

6   prosecutors says about the defendant, I'm always

7   interested in knowing, interested in hearing.

8       But I'm much more interested in what the defendant

9   says about herself and what the people who know her say

10  about her and, of course, the criminal conduct which I

11  have to consider.

12      You have overcome much in your life.  Mr. Thomas is

13  certainly right about that.  And you've had, until this

14  extended criminal activity, which it is, you've had a

15  very admirable life.

16      And everything in the letters that I read from your

17  family, from your mother, who I found that -- your Mom's

18  letter I found really a remarkable statement, talking

19  about somebody who has overcome her disabilities.  This

20  is a beautiful letter, remarkably articulate and

21  eloquent about you.

22      I was also struck by the letter from the contractor

23  who you worked with, who apparently began on a -- you

24  had an interesting relationship at first.

25

Sentence Hearing    12-2-2014

1        Apparently, you were tough with him, but you became

2    friends, Mr. Wolf, but, apparently, you became friends.

3    He talks about what a good heart you have and a good

4    person.

5        But, on the other hand, the picture I get is a very

6    strong-willed woman who's going to get her way no matter

7    what, even if it makes -- even if it may be breaking the

8    law and that's what I'm concerned about going forward.

9        I'm concerned about that when you believe that

10   you're doing something for a greater good.  You told me

11   in your letter you believed that you were trying to help

12   the City of Detroit and help people, put people into

13   houses.  You, obviously, were also trying to help

14   yourself.

15       And I'm concerned that maybe you have blinders on

16   when you're trying to help others and trying to help

17   yourself and you're looking for shortcuts around the

18   law.  That's what it looks to me like happened here.

19       It was easy, there was temptation.  You thought you

20   were doing well by doing good.  And you really weren't

21   too concerned about the moral hazard that you were

22   creating for yourself and for others, and weren't too

23   concerned about the fact that you were, you know,

24   cutting corners on the law.  And I'm concerned that

25   maybe that hasn't changed.

Sentence Hearing    12-2-2014

1      What could you tell me going forward?

2          THE DEFENDANT:  Well, moving forward, you

3   know, in real estate -- and, you know, it was just a

4   matter of I didn't take the time to learn it.  You

5   have -- you know, the wrong people around you, you know,

6   doing the same thing and you think it's okay.  Far as

7   me -- you said that you felt like, you know, I was, you

8   know, trying to make money for me.

9      At the end of the day, when I closed on those

10  houses, I could have took that money and ran.  But, you

11  know -- but I went back and I fixed those houses up.

12     So, you know, I understand what everything

13  everybody is saying.  Bottom line is when we closed, I

14  had the money.  I could have took the money and did

15  other things with it.  But I still took the time to go

16  back and renovate those houses the correct way like I

17  was supposed to.

18     You know with Section 8, in order for you to even

19  put a tenant in there, it had to be newly renovated.  So

20  at the same time, I look at that.

21     As far as taxes, I got into taxes when -- you know,

22  just -- based off, you know, franchise said here, you do

23  the taxes.  I failed because I never took the time to

24  really, you know, learn.  You got to read about --

25

Sentence Hearing     12-2-2014

 1          THE COURT:  What are you going to do when you

 2   finish your sentence?

 3          THE DEFENDANT:  When I finish my sentence?

 4          THE COURT:  What can you -- how do I know that

 5   you're not going to fall into the next scam?

 6          THE DEFENDANT:  There -- because one thing, I

 7   made a commitment to myself that I would not jeopardize

 8   my integrity for money, ego. It's just not worth it.

 9   You're dealing with -- it's not worth it.  You're

10   dealing with people out there.  It's just not worth it.

11   I know, you know, its -- it ain't worth it.

12       It's not worth your freedom, it's not worth, you,

13   know, having to be, you know, away.  It's just not worth

14   it.  It's not worth it.

15       But when I step out -- I mean -- I know you don't

16   see it, but -- and I mean I have over 300,000 people

17   that follow me on social media.  It's all about

18   inspiring people, letting people, you know, that

19   committing crimes is not worth it.  It's just not worth

20   it.  It's not worth it.

21       So I plan to step out and be a better, a better

22   person then I was yesterday.

23          THE COURT:  Well, I don't have a crystal ball;

24   and I believe that you want to be.

25

Sentence Hearing     12-2-2014

1    But I hope that you're not going to be easily

2  tempted into the next scam that comes along, because

3  you're a wilful person and that's a good thing.

4    People who are wilful persevere and they are

5  tenacious, but it's important that you maintain a

6  perspective and make sure that you're not just plowing

7  ahead and are yielding to the next temptation that comes

8  along.

9    All right.  As I've indicated, I'm going to accept

10  the plea agreement and accept the guideline range of 33

11  to 41 months as a beginning point.

12    I do find some basis for variance here, given --

13  some basis for variance here, given Ms. Powell's -- the

14  complete picture of Miss Powell's life.

15    She doesn't pose a threat to anyone.  I don't think

16  she poses a threat to the communities, certainly not any

17  kind of threat of violence.

18    I am a little bit concerned about the blind spots

19  she has; and she can benefit from some further training

20  and education if she's going to remain in the real

21  estate field or the tax field.

22    She is not a threat to herself or others.  She

23  doesn't do drugs.  She's got good family support.

24    And unlike many defendants who come before the

25  Court, she is a good candidate to pay the restitution

Sentence Hearing     12-2-2014

1   obligation that I'm going to order.  And I hope that she

2   will -- I hope that she will commit, as she says she

3   will, to meeting the requirements of the restitution

4   obligation.  So I am going to do a slight variance.

5       In the matter of the United States of America

6   versus Annetta Powell, criminal docket number 11-20693,

7   with respect to Count One of the indictment, which is

8   the count of conviction here, it is the judgment of this

9   Court, after considering the sentencing guidelines and

10  the factors contained in the sentencing statute, as well

11  as those factors which the Court has discussed here on

12  the record with the defendant and counsel, that the

13  defendant be committed to the custody of the Bureau of

14  Prisons for a term of 24 months.

15      It is further ordered that the defendant pay a

16  special assessment of $100 for each count of conviction,

17  which will be due immediately.

18      Restitution, as I've discussed here, is imposed by

19  the Court in the amount of $2,093,366.70, which I

20  believe is the agreed upon amount of restitution.

21          MR. THOMAS:  It's in the Rule 11.

22          PROBATION OFFICER:  Your Honor, I was just

23  thinking I think that might be a typo.  If the Court

24  will give me one minute?

25

Sentence Hearing     12-2-2014

1          THE COURT:  I thought that was the amount that

2    was in the plea agreement.

3          PROBATION OFFICER:  Russ has initially

4    921,601.

5          MR. WEIER:  That was long ago.

6          THE COURT:  That wasn't correct.

7          MR. THOMAS:  That was the typo.

8          THE COURT:  That was not correct.

9      I am going to waive, however, the imposition of a

10   fine or costs of incarceration, costs of supervision,

11   due to the defendant's relative lack of financial

12   resources compared to the restitution obligation that

13   the Court has now ordered.

14     Court believes that rather than imposing these

15   fines and costs, it would be better for the defendant to

16   devote her resources to paying the restitution amount.

17     While the defendant is in custody, she will

18   participate in the Inmate Financial Responsibility

19   Program.  The Court is aware of the requirements of the

20   program and approves the payment schedules and orders

21   the defendant's compliance.

22     I've reviewed the defendant's health and substance

23   abuse history.  There is none, so I am going to suspend

24   the mandatory drug testing, based upon my determination

25   that the defendant poses little or no risk of future

Sentence Hearing     12-2-2014

1   substance abuse.

2        While on supervision, the defendant will abide by

3   the standard conditions of supervised release which have

4   been adopted by this Court as well as the following

5   special conditions.

6        Due to the restitution obligation, the defendant

7   will not incur any new credit charges or open any

8   additional lines of credit without the approval her

9   probation officer unless she's in compliance with the

10  payment schedule.

11       She will provide her probation officer with access

12  to any requested financial information.  She will make

13  monthly installments payments on any remaining balance

14  of her restitution and special assessment at a rate and

15  schedule recommended by her probation officer and

16  approved by the Court.

17       Due to the defendant's back tax obligation, she

18  will make arrangements with the Internal Revenue Service

19  regarding a monthly payment plan regarding the payment

20  of back taxes, plus any taxes and interest that may

21  accrue.

22       The defendant is to provide a payment arrangement

23  schedule with IRS to her probation officer.  All right.

24            MR. THOMAS:  Judge, just for the record,

25

Usa v Powell 11-20693

Sentence Hearing     12-2-2014

1   she's taking steps towards doing that already.  She will

2   follow through.

3                THE DEFENDANT:  I paid like a majority of it.

4                THE COURT:  All right.  Ms. Powell, I have now

5   accepted your plea agreement, sentenced you in

6   accordance with it.

7        And under the terms of your plea agreement, you

8   agreed that if I were to accept it and sentence you in

9   accordance with it, you would waive or give up any right

10  that you had to appeal either your conviction or your

11  sentence.  So because I have now done this, you have no

12  right to appeal either your conviction or your sentence.

13  Okay?

14               MR. WEIER:  Your Honor, what period of

15  supervised release?

16               THE COURT:  I thought I said two years, didn't

17  I?  I may have skipped over that.  Two years supervised

18  release.  Thank you.

19               MR. WEIER:  Thank you.

20               THE COURT:  I've received a report from

21  Pretrial that the defendant's in full compliance with

22  her pretrial bond.

23       And, Mr. Weier, I assume you've no objection

24  allowing her to remain on bond --

25

Sentence Hearing     12-2-2014

1          MR. WEIER:  That's correct.

2          THE COURT:  -- until she's designated.

3          MR. WEIER:  That's correct.

4      We've also discussed -- parties have discussed a

5   report date extension already.

6      Mr. Thomas is going to ask the Court to extend her

7   report date until the end of February.  I don't object

8   to that.

9          THE COURT:  That's fine.

10         MR. THOMAS:  Thank you, judge.

11         THE COURT:  In the meantime, Ms. Powell --

12         THE DEFENDANT:  Thank you so much.  I

13  appreciate it.

14         THE COURT:  All right.  Very good.

15  Thank you.

16         (This hearing concluded at 3:22 p.m.)

17

18             CERTIFICATE OF COURT REPORTER

19

20     I certify that the foregoing is a correct transcript

21      from reported proceedings in the above-entitled

22      matter.

23

24

25  s/Carol S. Sapala, FCRR, RMR        February 5, 2015